IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

MICKEY DWAYNE SAMUEL,

    Petitioner,

    v.

SOUTHERN OHIO
CORRECTIONAL FACILITY,

    Respondent.

CASE NO. 2:13-CV-76
JUDGE GEORGE C. SMITH
MAGISTRATE JUDGE KING

## REPORT AND RECOMMENDATION

This is an action for a writ of habeas corpus pursuant to 28 U.S.C. 2254. This matter is before the Court on the *Petition,* Doc. No. 4, Respondent's *Return of Writ,* Doc. No. 9, and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**.

**Facts and Procedural History**

The Ohio Tenth District Court of Appeals summarized the facts and procedural history of this case as follows:

> Defendant-appellant, Mickey D. Samuel, appeals the judgment of the Franklin County Court of Common Pleas convicting him of two counts of aggravated robbery, two counts of robbery, two counts of kidnapping, as well as the firearm and repeat violent offender specifications attached to those counts, and one count of having a weapon while under disability.
>
> On February 3, 2010, appellant was indicted on two counts of aggravated robbery in violation of R.C. 2911.01, felonies of the first degree; two counts of robbery in violation of R.C. 2911 .02, felonies of the second degree; two counts of kidnapping in violation of R.C. 2905.01, felonies of the first degree; and one count of having a weapon while under disability in violation of R.C. 2923.13, a felony of the third degree. Each of the aggravated robbery, robbery, and kidnapping counts included firearm

specifications pursuant to R.C. 2941.145, and repeat violent offender specifications pursuant to R.C. 2941.149. These charges arose from the alleged robbery of Amanda Hair and Tara Shea on May 29, 2009.FN1

FN1. The indictment also charged appellant with one count of aggravated robbery, one count of robbery, one count of kidnapping, all with firearm and repeat violent offender specifications, and one count of having a weapon while under disability, arising from the alleged robbery of Bruce Fleming on November 2, 2009. Prior to trial in the instant matter, the trial court, upon motion of appellant and, with agreement of the prosecution, severed these charges from the indictment. In its amended judgment entry filed following trial in the instant matter, the trial court, upon request of the prosecution, entered a nolle prosequi on these counts, subject to reinstatement upon reversal, vacation or nullification of the conviction in the instant case.

Appellant waived his right to a jury on the weapons under disability charge. A jury trial was held on the remaining charges, at which the following evidence was adduced.

At approximately 6:15 p.m. on May 29, 2009, Shea and her friend, Hair, were driving in Shea's car in the area of Sixth and Krumm in Columbus. Appellant, an acquaintance of both Shea and Hair who lived in the area, flagged Shea down and asked her to take him to a nearby store. Shea agreed on condition that appellant give her $10 for gas money. Shea used the $10 for gas and then drove appellant to the store.

After leaving the store a short time later, the three went to appellant's home to smoke a "blunt." (Tr. 66.) Once inside the house, they walked downstairs and into appellant's bedroom. After Shea and Hair sat down, appellant pulled out a gun and demanded that the women turn over their belongings. When Shea began screaming, appellant stomped on her foot and ordered her to be quiet or he would shoot her.

Appellant took $15 in cash and a small amount of marijuana Shea had hidden in her shirt. Appellant took a "[weed] grinder," cigarettes, some marijuana, and a cell phone from Hair's purse, as well as $190 in cash and two Oxycontin pills she had hidden in her shirt. (Tr. 115.) When Hair asked appellant to return her cell phone, appellant threatened to kill her and asked her if she planned to call the police. Both she and Shea assured appellant they would not report the robbery.

Appellant then ordered the women to leave and continued pointing the gun at them as they walked up the stairs to the first floor. At trial, Shea testified that appellant stated, "I know where you both live and don't think I won't come * * * i[f] you guys tell on me." Shea believed appellant meant "he was going to kill us or something if we told on him." (Tr. 70.) Hair corroborated Shea's testimony, averring that appellant threatened to kill both women if they reported the incident to the police.

The women ran out the front door and drove to the home of Hair's mother in Gahanna. Although Shea still had her cell phone, it had no minutes on it, so she could not call the police. The women reported the robbery to Hair's mother, who convinced Hair to call 911. Because Hair's mother's home was outside the jurisdiction of the Columbus police department, Shea and Hair agreed to meet a Columbus police officer at a Columbus location to make a report.

Columbus Police Officers Robert Shepherd and David Gardner met with Shea and Hair at approximately 7:15 p.m. on May 29, 2009. The women reported they had been robbed at gunpoint inside appellant's residence. In particular, Hair reported only that appellant took her cash and cell phone. She did not tell the officers about the Oxycontin pills because she did not have a prescription for them and did not want to get in trouble. Shea reported only that she was present during the robbery. She did not tell the officers she had been robbed because she did not want to get in trouble for having marijuana and she was afraid appellant would retaliate against her. Both women described appellant as an African–American male with short black hair, 5′10″ tall, 220 pounds, and missing a tooth. According to Officer Shepherd, the women appeared to be "shaken" and were concerned for their safety; they did not want to return to the scene of the robbery because they were afraid appellant would hurt them. (Tr. 43.)

In mid-January 2010, Shea met with a Columbus police detective and identified appellant from a photo array as the individual who had pointed a gun at her, robbed Hair, and threatened to physically harm both women if they reported the incident. Because she was still fearful of appellant, Shea once again did not report that appellant had stolen anything from her. Shea subsequently met with a Franklin County prosecutor and reported that appellant had stolen $15 and marijuana from her.

Upon this evidence, the jury returned verdicts finding appellant guilty on the aggravated robbery, robbery, and kidnapping counts

3

and the attendant firearm specifications. The court subsequently found appellant guilty of the repeat violent offender specifications and having a weapon under disability. Based on the convictions and specifications, the trial court sentenced appellant to a 35–year prison term.

On appeal, appellant sets forth the following five assignments of error for this court's review:

ASSIGNMENT OF ERROR NO. 1:

A TRIAL COURT ERRS AND VIOLATES THE RIGHTS OF A CRIMINAL DEFENDANT WHEN IT ALLOWS THE PROSECUTOR TO MODIFY AN INDICTMENT ON THE EVE OF TRIAL, ESPECIALLY WHERE THE DEFENDANT IS PRO SE.

ASSIGNMENT OF ERROR NO. 2:

THE CONVICTION IN THIS CASE IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

ASSIGNMENT OF ERROR NO. 3:

THE TRIAL COURT ERRED WHEN IT FAILED TO GRANT THE DEFENDANT'S MOTION FOR ACQUITTAL.

ASSIGNMENT OF ERROR NO. 4:

THE JUDGMENT OF CONVICTION AND SENTENCE IMPOSED UPON APPELLANT SAMUEL FOR BEING A REPEAT VIOLENT OFFENDER VIOLATES HIS RIGHT TO DUE PROCESS OF LAW, UNDER THE FOURTEENTH AMENDMENT OF THE U.S. CONSTITUTION AND HIS RIGHT TO TRIAL BY JURY UNDER THE SIXTH AND FOURTEENTH AMENDMENTS, AND THEIR COUNTER PARTS IN THE OHIO CONSTITUTION, ART. I §§ 9, 16, IN THAT APPELLANT DID NOT WAIVE HIS RIGHT TO TRIAL BY JURY OF THAT OFFENSE/SPECIFICATION AS REQUIRED BY R.C. 2945.05.

ASSIGNMENT OF ERROR NO. 5:

THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT'S RIGHT UNDER THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE U.S.

> CONSTITUTION BY ENTERING JUDGMENT OF CONVICTION AND SENTENCE UPON HIM FOR BEING A REPEAT VIOLENT OFFENDER IN THE ABSENCE OF LEGALLY SUFFICIENT EVIDENCE TO SUPPORT SUCH A CONVICTION AND SENTENCE.

*State v. Samuel,* No. 11AP-158, 2011 WL 6930630, at *1-3 (Ohio App. 10th Dist. Dec. 30, 2011). On December 30, 2011, the Ohio Court of Appeals affirmed the trial court's judgment. On April 18, 2012, the Ohio Supreme Court dismissed Petitioner's subsequent appeal. *State v. Samuel,* 131 Ohio St. 1512 (2012).

On January 30, 2013, Petitioner initiated this action for a writ of habeas corpus pursuant to 28 U.S.C. 2254. He alleges, first, that he was denied a fair trial because the prosecution produced the 911 recording only on the first day of trial (claim one) and, second, that the evidence was constitutionally insufficient to sustain his convictions (claim two).

It is the position of the Respondent that Petitioner's claims are procedurally defaulted.

**Procedural Default**

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required fairly to present those claims to the highest court of the state for consideration. 28 U.S.C. § 2254(b), (c). If he fails to do so, but still has an avenue open to him by which he may present the claims, his petition is subject to dismissal for failure to exhaust state remedies. *Id.; Anderson v. Harless*, 459 U.S. 4, 6 (1982) ( *per curiam* ); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971). If he can no longer present his claims to a state court, he has waived them for federal habeas review unless he can demonstrate cause for the procedural default and actual prejudice from the alleged

constitutional error. *Murray v. Carrier*, 477 U.S. 478, 485 397 (1986*); Engle v. Isaac*, 456 U.S. 107, 129 (1982); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

In the Sixth Circuit, the Court considers the following to determine whether a federal habeas claim is precluded because of a petitioner's failure to observe a state procedural rule: "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  Second, the Court must determine whether the state courts actually enforced the state procedural sanction. *Id*. Third, the Court must determine whether the state procedural forfeiture is an 'adequate and independent' state ground on which the state can rely to foreclose review of a federal constitutional claim. *Id.* Finally, if the Court determines that the petitioner failed to comply with an adequate and independent state procedural rule, petitioner must demonstrate cause for his failure to follow the State's procedural rule as well as actual prejudice from the alleged constitutional error. *Id*.

Petitioner complains in his first claim that the prosecution failed to produce the 911 recording until the first day of trial. Petitioner raised this claim with the trial court in his motion for acquittal, but failed to raise the claim on direct appeal.  Petitioner may now no longer raise this claim in the state courts by operation of Ohio's doctrine of *res judicata. See State v. Cole,* 2 Ohio St.3d (1982); *State v. Ishmail,* 67 Ohio St.2d 16 (1981); State *v. Perry*, 10 Ohio St.2d 175 (1967) (claims must be raised on direct appeal, if possible, or they will be barred by the doctrine of res judicata.). The state courts were never given an opportunity to enforce the procedural rule at issue due to the nature of Petitioner's procedural default.

Ohio's doctrine of *res judicata* in this context is adequate and independent under the third part of the *Maupin* test. To be "independent," the procedural rule at issue, as well as the state

court's reliance thereon, must rely in no part on federal law. *See Coleman v. Thompson*, 501 U.S. 722, 732–33 (1991). To be "adequate," the state procedural rule must be firmly established and regularly followed by the state courts. *Ford v. Georgia*, 498 U.S. 411 (1991). "[O]nly a 'firmly established and regularly followed state practice' may be interposed by a State to prevent subsequent review by this Court of a federal constitutional claim." *Id.* at 423 (quoting *James v. Kentucky,* 466 U.S. 341, 348–351 (1984)); *see also Barr v. City of Columbia*, 378 U.S. 146, 149 (1964); *NAACP v. Alabama ex rel. Flowers*, 377 U.S. 288, 297 (1964); s*ee also Jamison v. Collins,* 100 F.Supp.2d 521, 561 (S.D. Ohio 1998).

The Sixth Circuit has consistently held that Ohio's doctrine of *res judicata, i.e.*, the *Perry* rule, is an adequate ground for denying federal habeas relief. *Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006); *Coleman v. Mitchell*, 268 F.3d 417, 427–29 (6th Cir. 2001); *Seymour v. Walker,* 224 F.3d 542, 555 (6th Cir. 2000); *Byrd v. Collins*, 209 F.3d 486, 521–22 (6th Cir. 2000); *Norris v. Schotten*, 146 F.3d 314, 332 (6th Cir. 1998). Ohio courts have consistently refused, in reliance on the doctrine of *res judicata*, to review the merits of claims because they are procedurally barred. *See State v. Cole*, 2 Ohio St.3d at 112 ; *State v. Ishmail*, 67 Ohio St.2d at 16. Additionally, the doctrine of *res judicata* serves the state's interest in finality and in ensuring that claims are adjudicated at the earliest possible opportunity. With respect to the independence prong, the Court concludes that Ohio's doctrine of *res judicata* in this context does not rely on or otherwise implicate federal law. Accordingly, the Court is satisfied from its own review of relevant case law that the *Perry* rule is an adequate and independent ground for denying relief.

In claim two, Petitioner alleges that the evidence was constitutionally insufficient to sustain his convictions. Although Petitioner raised this claim on direct appeal, he failed to raise

7

the claim in his appeal to the Ohio Supreme Court. *See Exhibit 33 to Return of Writ.* Again, Petitioner may now no longer do so by operation of Ohio's doctrine of *res judicata.*

Petitioner may still secure this Court's review of these claims on the merits if he establishes cause for his procedural default as well as actual prejudice from the alleged constitutional violations.

> " 'Cause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him [;] ... some objective factor external to the defense [that] impeded ... efforts to comply with the State's procedural rule." *Coleman v. Thompson*, 501 U.S. 722, 753, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

*Maples v. Stegall,* 340 F.3d 433, 438 (6th Cir. 2003). Petitioner has failed to meet this standard. Nothing in the record indicates that any external factor impeded Petitioner's ability to pursue proper appeals raising the claims presented in the *Petition*.

Additionally, any claimed ineffective assistance of appellate counsel cannot serve as cause for Petitioner's procedural default, because such a claim has never been presented to the state courts. *See Edwards v. Carpenter*, 529 U.S. 446, 451–52 (2000) (ineffective assistance of counsel can constitute cause for a procedural default only if that claim has been properly preserved).

Beyond the four-part *Maupin* analysis, this Court is required to consider whether this is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. at 491; *see also Sawyer v. Whitley*, 505 U.S. 333.

> [I]f a habeas petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims." *Schlup*, 513 U.S. at 316, 115 S.Ct. 851, 130 L.Ed.2d 808.

> Thus, the threshold inquiry is whether "new facts raise [] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial." *Id.* at 317, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808. To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id.* at 327, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808. The Court has noted that "actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup*, 513 U.S. at 324, 115 S.Ct. 851, 130 L.Ed.2d 808. The Court counseled however, that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.' " *Id.* at 321, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808.

*Souter v. Jones,* 395 F.3d 577, 589 (6th Cir. 2005) (footnote omitted).  The record in this action fails to satisfy this standard.

In short, the Court concludes that Petitioner's claims have been procedurally defaulted.

**WHEREUPON,** the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED** as procedurally defaulted.

**Procedure on Objections**

If any party objects to this *Report and Recommendation*, that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further

9

evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

                                          *s/ Norah McCann King*
                                          Norah McCann King
                                          United States Magistrate Judge

March 31, 2014